**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
　　　 lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THERESA GORDON, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>TENCENT MUSIC ENTERTAINMENT GROUP, CUSSION KAR SHUN PANG, and MIN HU,<br><br>　　　Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Theresa Gordon ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Tencent Music Entertainment Group ("Tencent Music" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary

1

support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Tencent Music securities between December 12, 2018 and August 26, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Tencent Music securities during the Class Period and was economically damaged thereby.

7.      Defendant Tencent Music purports to operate online music entertainment platforms that provide music streaming, online karaoke, and live streaming services in the People's Republic of China. Tencent Music is incorporated in the Cayman Islands and its headquarters are located at Matsunichi Building, 17th Floor Midwest District of Hi-tech Park, Kejizhongyi Road Nanshan District, Shenzhen 518057, China.  Tencent Music's American Depository Shares ("ADSs") trade on the New York Stock Exchange ("NYSE") under the ticker symbol "TME."

8.      Defendant Cussion Kar Shun Pang ("Pang") has served as the Company's Chief Executive Officer ("CEO") throughout the Class Period.

9.      Defendant Min Hu ("Hu") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10.     Defendants Pang and Hu are collectively referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

       (a)      directly participated in the management of the Company;

       (b)      was directly involved in the day-to-day operations of the Company at the highest levels;

       (c)      was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     Tencent Music is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tencent Music under *respondeat superior* and agency principles.

14.     Defendants Tencent Music and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

15.     On October 2, 2018, Tencent Music filed with the SEC a Form F-1 Registration Statement (the "Registration Statement") for its Initial Public Offering ("IPO"). The Registration Statement, as amended, was signed by Defendants Pang and Hu and declared effective by the SEC on December 11, 2018.

4

16.     On December 12, 2018, Tencent Music filed with the SEC a prospectus (the "Prospectus") for the IPO, which forms part of the Registration Statement, offering to sell to the public 41,029,829 ADSs at a price of $13.00 per ADS.

17.     The Registration Statement stated the following regarding competition:

> We operate in a competitive industry. We face competition for users and their time and spending primarily from the online music services provided by other online music services providers in China. We also face competition from online offerings of other forms of content, including karaoke services, live streaming, radio services, literature, games and video provided by other social entertainment services providers. In particular, we are facing increasing competition from offerings of other emerging forms of content which have been growing in popularity rapidly in recent years, such as live streaming and user-generated short-form video.

> We compete with our competitors based on a number of factors, such as the diversity of content, product features, social interaction features, quality of user experience, brand awareness and reputation. Some of our competitors may have greater financial, marketing or technology resources than we do, which enable them to respond more quickly to technological innovations or changes in user demands and preferences, acquire more attractive content and devote greater resources towards the development, promotion and sale of products than we can. Also, they may provide their users with content that we do not have the license to offer. If any of our competitors achieves greater market acceptance or is able to provide more attractive content offerings than we do, our user traffic and market share may decrease, which may result in a loss of users and a material and adverse effect on our business, financial condition and results of operations.

18.     The Registration Statement stated the following regarding content licensing and sub-licensing:

> We sublicense certain of our licensed music content to other online music platforms in accordance with the terms of the relevant master license and distribution agreements. We sublicense such music content to other online music platforms at a fixed rate typically for a term of one year, renewable by mutual agreement of both parties. Unlike the long-term master distribution agreements, we typically enter into sublicensing agreements on relatively shorter terms to preserve more flexibility to respond to market changes. From a business strategy perspective, we believe that being a content sub-licensor under our master distribution agreements with music labels allows us to continue to work closely with music labels to drive the growth and development of China's online music entertainment industry. Specifically, it enables us to further promote copyright

protection by working closely with music labels and other online music platforms, and to continue cultivating Chinese consumers' willingness to pay for music content. Our track record in such endeavors in turn reinforces our relationship with the music labels and makes us a go-to content partner in China for distribution of their content. In addition to sublicensing fees, being an original licensee also generally raises our industry prestige and reinforces our brand image among users, which benefits our sales and marketing strategy in the long term.

*      *      *

○   We have strong partnerships with a wide range of music labels and other copyright owners. As of September 30, 2018, we licensed musical recording rights and/or music publishing rights underlying music content on terms ranging from one to three years from over 200 domestic and international music labels, including through master distribution and licensing agreements with Sony Music Entertainment, Universal Music Group, Warner Music Group, Emperor Entertainment Group and China Record Group Co., Ltd.

○   We pay for music labels for licensed music content based on a minimum guaranteed licensing fee and revenue-sharing incentive royalties. Under such fee arrangements, the amounts of minimum guaranteed licensing fees and incentive royalties depend on factors including the type of content, the popularity of the performers, as well as our relationships with the licensors. Payments under the licenses are generally made in installments throughout the duration of the licenses.

○   We have long-term arrangements with several online music platforms in China to cross-license our respective licensable or sub-licensable rights in musical works.

19.     The Registration Statement issued in connection with the IPO was materially false and misleading and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. These materially false and misleading statements and omissions remained alive and uncorrected during the Class Period.

<strong>Materially False and Misleading<br>Statements Issued During the Class Period</strong>

20.    The Class Period begins on December 12, 2018, the first day Tencent Music ADSs traded on the NYSE. Prior thereto, on December 10, 2018, Tencent Music issued the Registration

Statement, as amended, that contained materially false and misleading statements and omissions about the anticompetitive nature of the Company's exclusive licensing deals with major record labels. These materially false and misleading statements and omissions remained alive and uncorrected during the Class Period.

21.     On December 12, 2018, Tencent Music filed the Prospectus with the SEC. The Prospectus contained materially false and misleading statements and omissions about the anticompetitive nature of the Company's exclusive licensing deals with major record labels.

22.     On April 19, 2019, the Company filed its annual report on Form 20-F with the SEC for the year ending December 31, 2018 (the "2018 20-F"). The 2018 20-F was signed by Defendants Pang and Hu. Attached to the 2018 20-F were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Pang and Hu attesting to the disclosure of all fraud.

23.     The 2018 20-F stated the following regarding competition:

> We operate in a competitive industry. We face competition for users and their time and spending primarily from the online music services provided by other online music services providers in China. We also face competition from online offerings of other forms of content, including karaoke services, live streaming, radio services, literature, games and video provided by other social entertainment services providers. In particular, we are facing increasing competition from offerings of other emerging forms of content which have been growing in popularity rapidly in recent years, such as live streaming and user-generated short video.

> We compete with our competitors based on a number of factors, such as the diversity of content, product features, social interaction features, quality of user experience, brand awareness and reputation. Some of our competitors may have greater financial, marketing or technology resources than we do, which enable them to respond more quickly to technological innovations or changes in user demands and preferences, acquire more attractive content and devote greater resources towards the development, promotion and sale of products than we can. Also, they may provide their users with content that we do not have the license to offer. If any of our competitors achieves greater market acceptance or is able to provide more attractive content offerings than we do, our user traffic and market

share may decrease, which may result in a loss of users and a material and adverse effect on our business, financial condition and results of operations.

24.     The 2018 20-F stated the following regarding content licensing and sub-licensing:

We sublicense certain of our licensed music content to other online music platforms in accordance with the terms of the relevant master license and distribution agreements. We sublicense such music content to other online music platforms at a fixed rate typically for a term of one year, renewable by mutual agreement of both parties. Unlike the long-term master distribution agreements, we typically enter into sublicensing agreements on relatively shorter terms to preserve more flexibility to respond to market changes. From a business strategy perspective, we believe that being a content sub-licensor under our master distribution agreements with music labels allows us to continue to work closely with music labels to drive the growth and development of China's online music entertainment industry. Specifically, it enables us to further promote copyright protection by working closely with music labels and other online music platforms, and to continue cultivating Chinese consumers' willingness to pay for music content. Our track record in such endeavors in turn reinforces our relationship with the music labels and makes us a go-to content partner in China for distribution of their content. In addition to sublicensing fees, being an original licensee also generally raises our industry prestige and reinforces our brand image among users, which benefits our sales and marketing strategy in the long term.

*       *       *

o We have strong partnerships with a wide range of music labels and other copyright owners. As of December 31, 2018, we licensed musical recording rights and/or music publishing rights underlying music content on terms ranging from one to three years from domestic and international music labels, including through master distribution and licensing agreements with Sony Music Entertainment, Universal Music Group, Warner Music Group, Emperor Entertainment Group and China Record Group Co., Ltd.

o We pay for music labels for licensed music content based on a minimum guaranteed licensing fee and revenue-sharing incentive royalties. Under such fee arrangements, the amounts of minimum guaranteed licensing fees and incentive royalties depend on factors including the type of content, the popularity of the performers, as well as our relationships with the licensors. Payments under the licenses are generally made in installments throughout the duration of the licenses.

o We have arrangements with several online music platforms in China to cross-license our respective licensable or sub-licensable rights in musical works.

8

25.     The statements contained in ¶¶20-24 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Tencent Music's exclusive licensing arrangements with major record labels were anticompetitive; (2) consequently, sublicensing such content from Tencent Music was unreasonably expensive, in violation of Chinese antimonopoly laws; (3) these anticompetitive efforts were reasonably likely to lead to regulatory scrutiny; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## <u>THE TRUTH BEGINS TO EMERGE</u>

26.     On August 27, 2019, *Bloomberg* reported that China's antitrust authority, the State Administration of Market Regulation, was investigating the exclusive licensing deals between Tencent Music and major record labels including Universal Music Group, Sony Music Entertainment, and Warner Music Group. The article stated, in pertinent part:

> The State Administration of Market Regulation, which launched the probe in January, is scrutinizing the Shenzhen-based company's dealings with music labels including Universal Music Group, Sony Music Entertainment and Warner Music Group Corp., Bloomberg reported Tuesday. Shares of Tencent Music slid 6.8% in New York, marking their steepest drop since March 20. The rout pushed the stock into negative territory for the year, down 4.9%.
>
> The three largest record labels have all sold exclusive rights to a major chunk of their music catalogs to Tencent Music, which is controlled by social media titan Tencent Holdings Ltd. but also backed by Sony and Warner. Tencent Music then sublicenses that content to smaller rivals, an arrangement they complain is unfair. Tencent Music pays fees that are unreasonably high and passes along much of those costs to its competitors, people familiar with the matter said. Licensing songs from Tencent Music for use in China can be twice as expensive compared

to when licensing directly from major labels for the rest of the world, said one of the people, who asked not to be identified because the arrangement is private.

27.     On this news, Tencent Music ADSs fell $0.92 per share or 6.8% to close at $12.57 per share on August 27, 2019, damaging investors.

28.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Tencent Music securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Tencent Music, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tencent Music securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Tencent Music;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Tencent Music to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Tencent Music securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Tencent Music ADSs met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Tencent Music filed periodic public reports;

- Tencent Music regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Tencent Music's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Tencent Music was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

36.     Based on the foregoing, the market for Tencent Music securities promptly digested current information regarding Tencent Music from all publicly available sources and reflected such information in the prices of the ADSs, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

<u>COUNT I</u>
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
**<u>Against All Defendants</u>**

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tencent Music securities during the Class Period.

42.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Tencent Music were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Tencent Music, their control over, and/or receipt and/or modification of Tencent Music's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Tencent Music, participated in the fraudulent scheme alleged herein.

43.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Tencent Music personnel to members of the investing public, including Plaintiff and the Class.

44.     As a result of the foregoing, the market price of Tencent Music securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tencent Music securities during the Class Period in purchasing Tencent Music securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

45.     Had Plaintiff and the other members of the Class been aware that the market price of Tencent Music securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Tencent Music securities at the artificially inflated prices that they did, or at all.

46.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

47.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Tencent Music securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     During the Class Period, the Individual Defendants participated in the operation and management of Tencent Music, and conducted and participated, directly and indirectly, in the conduct of Tencent Music's business affairs. Because of their senior positions, they knew the adverse non-public information about Tencent Music's misstatement of revenue and profit and false financial statements.

50.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tencent Music's financial condition and results of operations, and to correct promptly any public statements issued by Tencent Music which had become materially false or misleading.

51.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tencent Music disseminated in the marketplace during the Class Period concerning Tencent Music's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tencent Music to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tencent Music within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tencent Music securities.

52.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tencent Music.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: September 26, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*