UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

THERESA GORDON,

                       Plaintiff,

           -against-

TENCENT MUSIC ENTERTAINMENT
GROUP et al.,

                   Defendants.

----------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-5465 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

       On September 26, 2019, Plaintiff Theresa Gordon initiated this putative class action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, on behalf of investors who purchased publicly traded securities of Tencent Music Entertainment Group ("Tencent") from December 12, 2018, to August 26, 2019 (the "Class Period"). (*See* Complaint ("Compl."), ECF No. 1, ¶ 1.) Currently pending before the Court is Plaintiffs' motion for leave to file a second amended complaint (Pls.' Mot. for Leave to File ("Pls.' Mot."), ECF No. 110; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Mem."), ECF No. 110-1), which the Honorable LaShann DeArcy Hall referred to the undersigned magistrate judge (Aug. 4, 2021 ECF Order). Defendants oppose the motion. (Defs.' Mem. in Opp'n to Pls.' Mot. ("Defs.' Opp'n"), ECF No. 111.)

       For the reasons set forth below, the Court grants Plaintiffs' motion for leave to amend. Plaintiffs are directed to file their proposed second amended complaint within fourteen days of this Memorandum and Order.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

As noted, this case commenced on September 26, 2019. (Compl., ECF No. 1.) Thereafter, on December 3, 2019, the Honorable Steven M. Gold granted Euclidean Investment LLC and Andrey Zaborsky's unopposed motion to serve as Lead Plaintiffs and to appoint The Rosen Law Firm, P.A. as Lead Counsel. (*See* Dec. 3, 2019 ECF Order; *see also* ECF Nos. 5, 11.) Plaintiffs[2] then filed an amended complaint on February 2, 2020, naming twenty-five individual and corporate Defendants, and alleging violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, as well as Sections 10(b) and 20(a) of the Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (*See* First Amended Complaint ("FAC"), ECF No. 23, ¶¶ 1, 12, 18–33, 37–50.)[3]

## I. Plaintiffs' First Amended Complaint

In the first amended complaint, Plaintiffs alleged that Defendant Tencent, "the largest online music entertainment platform in China," violated the Securities Act and the Exchange Act by failing to properly disclose in relevant filings with the U.S. Securities and Exchange Commission ("SEC") that it was "the subject of an on-going

---

[1] The Court assumes general familiarity with the procedural history of this case, and only includes the background most relevant for the instant motion.

[2] "Plaintiffs" herein refers to both named Plaintiff Theresa Gordon and Lead Plaintiffs Euclidean Investment LLC and Andrey Zaborsky.

[3] While the initial complaint named only Tencent Music Entertainment Group, Cussion Kar Shun Pang, and Min Hu as Defendants (*see* Compl., ECF No. 1), Plaintiffs' first amended complaint named: Tencent Music Entertainment Group; Cussion Kar Shun Pang; Min Hu; Tencent Holdings Limited; Tao Sang Tong; Zhenyu Xie; Guomin Xie; Martin Chi Ping Lau; Brent Richard Irvin; Tak-Wai Wong; Liang Tang; Haifeng Lin; Morgan Stanley & Co. LLC; Goldman Sachs (Asia) L.L.C.; J.P. Morgan Securities LLC; Deutsche Bank Securities Inc.; Merrill Lynch; Pierce, Fenner & Smith Incorporated; Credit Suisse Securities (USA) LLC; China International Capital Corporation Hong Kong Securities Limited; Allen & Company LLC; BOCI Asia Limited; China Renaissance Securities (Hong Kong) Limited; HSBC Securities (USA) Inc.; KeyBanc Capital Markets Inc.; and Stifel, Nicolaus & Company, Incorporated (collectively "Defendants"). (*See* FAC, ECF No. 23, ¶¶ 18–33, 37–50.)

anti-monopoly investigation" being conducted by the Chinese government. (FAC, ECF No. 23, ¶ 7; *see also id.* ¶¶ 2, 6, 8, 70, 75, 87–92, 105–07.) Specifically, Plaintiffs claimed that Defendants' Registration Statement related to Tencent's December 12, 2018 IPO, as well as their Annual Report for 2018, failed to disclose the consequential nature of — and fallout from — a September 2017 meeting with China's National Copyright Administration. (*See id.* ¶¶ 7–8, 76, 87–92, 102, 105–07.) According to Plaintiffs, these statements were unlawful because Defendants misleadingly conveyed: (1) that "the Chinese government merely encouraged it not to enter into exclusive licensing arrangements, when in truth, the Chinese government warned Tencent Music that it shall 'avoid acquiring exclusive music copyright;'" and (2) that there was "no present or imminent threat that the Chinese government would impose regulatory penalties on Tencent," when Defendants knew that Tencent faced investigation and potentially significant fines for violations of China's anti-monopoly laws. (*Id.* ¶¶ 90, 92, 107.)

In support of these allegations, Plaintiffs claimed that following the September 2017 meeting, which Plaintiffs' "Witness 1," a bureau director at the National Copyright Administration, described as an "intervention" (*id.* ¶ 76), Defendants continued to engage in anti-competitive practices. For example, Defendants purportedly withheld a select one percent of Tencent's music catalog — or approximately two million of its most popular songs — from one of the company's main competitors, NetEase Cloud, and continued to pursue exclusive licensing agreements, in contravention of governmental admonishments and Chinese antitrust law. (*Id.* ¶¶ 71–74, 77, 80–82.) In addition, Plaintiffs alleged that Defendants failed to disclose that in late 2017, the National Development and Reform Commission of China ("NDRC") "initiated an examination" of Tencent's licensing practices, which ultimately led another government enforcement agency, the State Administration for Market Regulation of China

("SAMR"), to launch "an official investigation" in January 2019. (*Id.* ¶¶ 8, 75, 102; *see also id.* ¶ 76 (alleging that "Witness 1 has confirmed the NDRC anti-monopoly investigation of Tencent [] was ongoing throughout 2018"); *id.* ¶ 77 (noting that "[a]fter China combined and consolidated the antitrust divisions of the Ministry of Commerce, NDRC and [the State Administration for Industry and Commerce ("SAIC")] into SAMR in 2019, SAMR continued the formal anti-monopoly investigation of Tencent's music business").) Plaintiffs averred that in August 2019, following the publication of two news reports on the Chinese government's investigation into Tencent, the price of Tencent's securities dropped, leading to losses for investors. (*Id.* ¶¶ 9–11, 108–110.)

## II.    Defendants' Motion to Dismiss

On May 15, 2020, several corporate Defendants, including Tencent, filed a joint motion to dismiss the first amended complaint (*see* ECF Nos. 72–74; *see also* Notice of Suppl. Authority, ECF No. 75), which each of the other Defendants later joined (*see* ECF Nos. 80, 86, 92, 100, 105). On March 31, 2021, Judge DeArcy Hall granted Defendants' motion to dismiss Plaintiffs' claims under Section 11 of the Securities Act and Section 10(b) of the Exchange Act. (*See* Mar. 31, 2021 Mem. and Order ("Mem. and Order"), ECF No. 108.)

Judge DeArcy Hall concluded that Plaintiffs' Securities Act claim failed, in part, because it did not sufficiently allege that the Registration Statement's description of Tencent's September 2017 meeting with the National Copyright Administration was a "misstatement." (Mem. and Order, ECF No. 108, at 7.) More specifically, Judge DeArcy Hall observed that:

> According to the complaint, the National Copyright Administration only "warned" the companies in attendance that they should "avoid purchasing exclusive copyright" and "eliminate the obstacles that are hindering expansive licensing of online music." *There is no mention of any purported order.* Nor is there *any allegation* to support the inference that

> [Tencent] was the "*target*" of the meeting. At bottom, the Registration
> Statement describes the directive of the September 2017 Meeting in largely
> the same terms as alleged by Plaintiff. There is no misstatement.

(*Id.* (emphasis added) (citations omitted); *see also id.* at 8 ("[T]o the extent that what occurred at the September 2017 Meeting provides a basis to conclude that the government 'objected' to any of [Tencent]'s practices — that fact was disclosed.").)

The court also found that Plaintiffs did not plausibly plead that "any government investigation was ongoing prior to January 2019 — one month after the Registration Statement was filed," and that even if the Court were to construe Plaintiffs' allegations as supporting the claim "that a government investigation related to [Tencent]'s licensing practices was ongoing starting in late 2017, which defendants were aware of[,] there is no actionable omission related to any such investigation." (*Id.* at 9; *see also id.* at 9 n.6, 12 ("In the absence of a plausible allegation that [Tencent] was aware of any material impact of any investigation on [Tencent], there is no cognizable claim for a misstatement or omission.").) In other words, the District Court found that Plaintiffs failed to state a claim that the relevant disclosures in Tencent's Registration Statement were misleading. (*Id.* at 12; *see also* FAC, ECF No. 23, ¶¶ 89, 91.)

Furthermore, the court determined that Plaintiffs did not properly plead that Defendants had a duty to disclose allegedly anti-monopolistic conduct, and that even assuming Plaintiffs "plausibly pleaded that [Tencent]'s licensing agreements violated Chinese law . . . [Tencent]'s failure to accuse itself of violating anti-monopoly law is not a cognizable omission" because "[f]ederal securities laws do not require a company to accuse itself of wrongdoing." (Mem. and Order, ECF No. 108, at 13; *see also id.* at 12 (finding the claim that Tencent "was aware that it was violating Chinese law because [the company] was directed to 'cease and desist' at the September 2017 Meeting" to be unsupported by the allegations in the first amended complaint).) In addition, the court

found that Defendants did not have a statutory duty to disclose an investigation under SEC Regulation S-K, Items 303 and 503. (*Id.* at 15–16; *see also* FAC, ECF No. 23, ¶¶ 93–104.) Lastly, Judge DeArcy Hall concluded that under the Exchange Act, Plaintiffs' Section 10(b) claim as to Defendants' 2018 Annual Report also failed. (*See* Mem. and Order, ECF No. 108, at 17 (explaining that "the existence of a government investigation alone does not create a duty to disclose," and therefore, "for the reasons already stated related to the Registration Statement, Plaintiff's Exchange Act claims fail" to sufficiently allege a material misstatement or omission).)

As part of the order dismissing Plaintiffs' primary claims of materially false and misleading statements under Section 11 and Section 10(b), the District Court ordered Plaintiffs to show cause "as to why the remaining claims should not be dismissed for failure to state a claim for a primary Securities Act or Exchange Act violation." (Mar. 31, 2021 ECF Order.) In response, on April 13, 2021, Plaintiffs requested a pre-motion conference to seek leave to file a second amended complaint "to address the deficiencies enunciated in [Judge DeArcy Hall's] Order and to provide additional detailed factual allegations and more clarity relevant to falsity and materiality as to both the Sections 11 and 10(b) claims." (Mot. for Pre-Mot. Conference, ECF No. 109, at 1.) Judge DeArcy Hall denied Plaintiffs' motion for a pre-motion conference and directed the parties to brief the motion to amend. (Apr. 15, 2021 ECF Order.)

III.   **Plaintiffs' Motion for Leave to Amend**

On April 29, 2021, Plaintiffs filed the instant motion for leave to amend and accompanying documents. (Pls.' Mot., ECF No. 110; Pls.' Mem., ECF No. 110-1; Proposed Second Am. Compl. (redlined), ECF No. 110-2; Proposed Second Am. Complaint ("PSAC"), ECF No. 110-3.) In their motion, Plaintiffs request leave to make several amendments to the first amended complaint regarding the context and timeline

6

of the Chinese government's actions in response to Defendants' alleged anti-competitive practices. (*See, e.g.*, PSAC, ECF No. 110-3, ¶¶ 6, 71–72, 78–79.) Plaintiffs' motion also seeks to include new allegations concerning the materiality of the Chinese government's actions and the misleading aspects of what Defendants stated — and omitted — in Tencent's Registration Statement and subsequent 2018 Annual Report. (*Id.* ¶¶ 84–85, 91, 101–02, 106–09, 124.) Defendants object to Plaintiffs' motion on the grounds that the proposed amendments are simply "semantic changes" that "repackage[] the same core allegations as the last complaint based on substantially the same underlying sources," and are therefore futile because they would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Opp'n, ECF No. 111, at 1, 2, 5.)[4]

\*   \*   \*   \*   \*

For the reasons stated below, the Court grants Plaintiffs' motion for leave to file a second amended complaint.[5]

---

[4] On July 30, 2021, Plaintiffs filed a letter in further support of their motion, highlighting an "Administrative Penalty Decision" issued by the Chinese government on July 23, 2021, directing Tencent Holdings to "terminate all exclusive licensing arrangements because such arrangements violate Chinese competition law." (Pls.' Suppl. Letter, ECF No. 112, at 1–2; *see also* Decision on Administrative Penalty, attached as Ex. 1 to Pls.' Suppl. Letter, ECF No. 112-1.) Defendants filed a response on August 2, 2021, arguing that the Penalty Decision is immaterial because it pertains to an investigation initiated in 2021, and thus does not provide retroactive support for any claim about what Defendants should have known and/or disclosed in 2018 or 2019. (Defs.' Resp. Letter, ECF No. 113.) The Court agrees with Defendants, and therefore declines to take the Penalty Decision into consideration for the purposes of the instant motion. *Cf. Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.")

[5] A magistrate judge's grant of a motion to amend a complaint is generally considered non-dispositive. *See, e.g.*, *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 08-CV-5081 (DRH) (ARL), 2021 WL 4472852, at *8–9 (E.D.N.Y. Sept. 30, 2021); *Prosper v. Thomson Reuters Inc.*, No. 18-CV-2890 (MKV) (OTW), 2021 WL 535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021).

## DISCUSSION

### I.   Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Trial courts have discretion to grant or deny leave to amend. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. PVT Ltd.*, 338 F.R.D. 579, 583 (S.D.N.Y. 2021) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). As a general rule, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded the opportunity to test [their] claim on the merits." *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("*Loreley Fin.*") (noting that the "permissive standard" of Rule 15 is consistent with the Second Circuit's "strong preference for resolving disputes on the merits"); *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (describing "the liberal spirit of Rule 15").

However, a motion to amend a pleading should be denied "if there is an 'apparent or declared reason — such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (alteration in original) (quoting *Foman*, 371 U.S. at 182); *see also Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 209 (E.D.N.Y. 2017) ("The right to amend a pleading should only be granted where an amended pleading could withstand a motion to dismiss and thus would not be futile.").

Overcoming a claim of futility requires a showing of facial plausibility. *Hatteras Enterprises, Inc. v. Forsythe Cosm. Grp., Ltd.*, No. 15-CV-5887 (ADS) (ARL), 2019 WL 9443845, at *2 (E.D.N.Y. Jan. 14, 2019) ("[L]eave to amend will be denied as futile only if . . . it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." (alteration in original) (quoting *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001))); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) ("[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Additionally, "[t]he party opposing a motion to amend bears the burden of demonstrating that the proposed amendment is futile." *Bah v. Apple Inc.*, No. 19-CV-3539 (PKC), 2020 WL 4596839, at *1 (S.D.N.Y. Aug. 11, 2020); *see also Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).

## II.   Analysis

Plaintiffs argue their motion is timely, not the result of bad faith or dilatory motive, and that Defendants will not be prejudiced if it is granted. (Pls.' Mem., ECF No. 110-1, at 4–5.) In addition, Plaintiffs contend that "the proposed amendments directly address the deficiencies identified in the [District Court's] Order regarding (i) the lack of an actionable misrepresentation or omission and (ii) materiality." (*Id.* at 5.)[6]

---

[6] To the extent Plaintiffs are arguing that this "matter arises under the heightened pleading standards of Rule 9(b)," and therefore leave to amend should be granted on that basis (*see* Pls.' Mem., ECF No. 110-1, at 4 (citing *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986)), Judge DeArcy Hall's March 31, 2021 order observed that Plaintiffs' Section 11 claim "is not subject to the Rule 9(b) pleading standard." (Mem. and Order, ECF No. 108, at 5 n.3.) *See generally Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (distinguishing between Section 11 claims premised on negligence and those grounded on fraud, and holding "that the heightened pleading standard

Defendants, on the other hand, claim the motion is futile because, among other things, Plaintiffs are attempting to "rely on a recycled version of the same speculative and conclusory allegations," and have already "had many opportunities to cure their complaint's failings." (Defs.' Opp'n, ECF No. 111, at 1, 5.)

In reviewing Plaintiffs' request for leave to amend, the Court has considered the procedural history, Plaintiffs' first amended complaint, the District Court's March 31, 2021 order, the parties' memoranda of law in connection with the instant motion, and the allegations in Plaintiffs' proposed second amended complaint. Upon review, and in light of "this circuit strongly favor[ing] liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court grants Plaintiffs' request for leave to file a second amended complaint in an exercise of discretion. *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).

As a threshold matter, the Court finds that "the amendments are not, on their face, entirely futile." *City of Omaha v. CBS Corp.*, No. 08-CV-10816 (PKC), 2010 WL 3958849, at *3 (S.D.N.Y. Sept. 24, 2010); *see also Hatteras Enterprises, Inc.*, 2019 WL 9443845, at *2; *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013) (explaining that when considering whether the party opposing the amendment has met its burden of demonstrating futility, "the Court reads the claims at issue in the light most favorable to plaintiff and draw[s] all inferences in [their] favor." (quotation marks omitted)).[7] Further, "[b]ecause Plaintiffs

---

of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud").

[7] Some district courts have found that "[f]utility merely provides one 'appropriate basis for denying leave to amend.'" *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 125 n.11 (S.D.N.Y. 2002) (quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006)). On this view, where the

have not yet had an opportunity to amend in response to a Court order pointing out the deficiencies in their pleading," it is appropriate to "afford them an opportunity to do so." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309 (S.D.N.Y. 2019); *see also Ulbricht v. Ternium S.A.*, No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313, at *12 (E.D.N.Y. Sept. 14, 2020) (same); *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 173 (S.D.N.Y. 2015) ("The 'usual practice' in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint." (citing *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446–47 (S.D.N.Y. 2014))).

A. <u>Applicable Law</u>

Section 11 of the Securities Act imposes strict liability on the issuer of a registration statement if: "(1) the statement contained an untrue statement of a material fact, (2) the statement omitted to state a material fact required to be stated therein, or (3) the omitted information was necessary to make the statements therein not misleading." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 84 (2d Cir. 2021) (footnotes and quotation marks omitted); *see also* 15 U.S.C. § 77k(a) (providing a cause of action where "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not

---

"alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *Id.*; *see also Duchemin v. Leidos, Inc.*, No. 18-CV-12 (GPC) (MDD), 2018 WL 2229368, at *2 (S.D. Cal. May 16, 2018). *Cf. In re BRF S.A. Sec. Litig.*, No. 18-CV-2213 (PKC), 2019 WL 12875444, at *3 (S.D.N.Y. May 3, 2019) ("To the extent that defendants urge that the proposed amendment would be futile, that argument goes to [plaintiff]'s ultimate theories of liability, and [is] more appropriately tested through the anticipated motion to dismiss."). The reasoning of these cases applies with equal force here. Because Defendants may challenge Plaintiffs' second amended complaint with a motion to dismiss, Defendants will not suffer undue prejudice by Plaintiffs' filing of the second amended complaint.

misleading"). In the Second Circuit, "a statement or omission is material if a reasonable investor would view it as significantly altering the total mix of information made available." *Set Cap. LLC*, 996 F.3d at 84 (citing *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 146 (2d Cir. 2017)).

To state a claim under Section 10(b) of the Exchange Act and its implementing regulation, Rule 10b-5(b), "a plaintiff must plead six familiar elements: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021) (citing *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013)); *see also* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. For claims of alleged misstatements or omissions under Section 10(b), "dismissal on the basis that the misstatements or omissions are not material is unwarranted 'unless the[se misstatements or omissions] are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 131 (2d Cir. 2011) (alteration in original) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

Under both Section 11 and Section 10(b), "[a] misrepresentation or omission is material if there is a substantial likelihood that a reasonably prudent investor would consider it important in making a decision." *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551 (S.D.N.Y. 2021); *see also Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n*, 873 F.3d at 146 ("A material fact is one that assume[s] actual significance for a reasonable investor deciding whether to purchase the security at issue, but it need not be outcome-determinative." (alteration in original) (quotation marks omitted)). As the Second Circuit has explained, these securities laws "are founded on the principle that full and

fair disclosure of all material facts must be made to investors so that they may have the benefit of the facts in making their investment decisions." *Wilson*, 671 F.3d at 131 (quoting *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 249 (2d Cir. 1973)).

## B. Plaintiffs' Proposed Amendments

As discussed above, Plaintiffs' core claims are that Defendants made materially misleading statements in relation to Tencent's December 2018 IPO (i.e., in the Registration Statement),[8] as well as during the remainder of the Class Period (i.e., in the 2018 Annual Report). According to Plaintiffs, Defendants' material misstatements and omissions concern three central topics: (1) the September 2017 meeting with the National Copyright Administration; (2) the Chinese government's antitrust investigation into Tencent; and (3) Tencent's alleged violations of the Chinese anti-monopoly laws. For the reasons below, the Court finds that Plaintiffs' revised allegations, particularly with respect to the September 2017 meeting, are not entirely futile and therefore warrant granting an opportunity for Plaintiffs to amend their complaint in response to the District Court's order.[9] *Schiro*, 396 F. Supp. 3d at 309;

---

[8] As Judge DeArcy Hall noted in her March 31, 2021 memorandum and order, Plaintiffs do not contest the literal truth of the factual statements in Defendants' Registration Statement. (*See* Mem. and Order, ECF No. 108, at 5 (citing Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 73, at 8); *see also* PSAC, ECF No. 110-3, ¶¶ 153–54.) Rather, the theory of liability Plaintiffs advance in their proposed second amended complaint centers around the allegedly misleading nature of Defendants' purported misstatements. *See Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250–51 (2d Cir. 2014) (explaining that "[t]he literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations, taken together and in context. Thus, when an offering participant makes a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate" (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010))); *Rombach*, 355 F.3d at 172 n.7; *cf. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239–40 (2d Cir. 2016) (distinguishing between "pure omissions" and "half-truths").

[9] Because the District Court dismissed Plaintiffs' Section 11 and Section 10(b) claims due to the first amended complaint's failure to plausibly allege a material misstatement or omission (*see* Mem. and Order, ECF No. 108, at 6–14, 16–17), the Court's analysis focuses on this element.

*Ulbricht*, 2020 WL 5517313, at *12; *see also In re BRF S.A. Sec. Litig.*, 2019 WL 12875444, at *3; *City of Omaha*, 2010 WL 3958849, at *3.

> 1.  *Revised Allegations as to the September 2017 Meeting*

Plaintiffs' proposed second amended complaint alleges, in relevant part, the following with respect to the September 2017 meeting:

> On September 12, 2017, the National Copyright Administration summoned principal executives from Tencent [] and notified them that the battles over exclusive licensing should stop. National Copyright Administration also invited other music service companies such as NetEase Cloud, Tencent [] and Baidu Taihe to the meeting to observe the discipline. . . .
>
> . . . The order was specifically targeted at Tencent [] and resulted from complaints filed by Tencent[']s competitor NetEase. Plaintiffs' Witness 1 . . . states that the government order to online music platforms forbidding them from engaging in[] exclusive licensing agreements, issued at the September 2017 meeting, resulted from the intensification of the fight between Tencent [] with its competitor NetEase. The order plainly resolved the dispute *in favor of* NetEase and *against* Tencent [], because it was Tencent [] that was engaging in monopolistic practices. Witness 1 confirms that notwithstanding the PRC government's directive, Tencent continued to withhold licensing of 1% of its music playlist from its competitors, which were the best and most in demand tracks.

(PSAC, ECF No. 110-3, ¶¶ 71–72 (emphasis in original).)[10]

> 2.  *Revised Allegations as to the Governmental Investigation into Tencent*

The proposed amended complaint also includes additional factual allegations and context regarding the evolution of the Chinese government's antitrust oversight

---

[10] In contrast, the first amended complaint alleged only that the National Copyright Administration "summoned principal executives from Tencent['s] major competitors" to the September 2017 meeting to notify them "that their battles over exclusive licensing had been on the government's radar," and to "warn" them that "they should 'avoid purchasing exclusive copyright' and 'eliminate the obstacles that are hindering expansive licensing of online music.'" (FAC, ECF No. 23, ¶ 70; *see also id.* ¶ 76 ("Witness 1 states that Tencent Music's fight with its competitor NetEase intensified in 2017, which resulted in the National Copyright Administration's intervention and issuance of a warning to online music platforms . . . .").)

and investigation into Tencent. (*See* PSAC, ECF No. 110-3, ¶¶ 78–79, 80–83, 91–96.) For example, Plaintiffs allege that "[i]mmediately after the NDRC investigation, SAIC also launched its antitrust investigation of Tencent [] and sent a questionnaire to the Company at approximately the end of 2017 or the beginning of 2018 . . . ." (*Id.* ¶ 79; *see also id.* ("The [April 2018] PaRR Memo noted that PaRR had contacted Tencent Music for comment on the [antitrust] investigations.").)[11] Plaintiffs also assert that the relevant Chinese antitrust enforcement authorities "do not make any distinction between preliminary/informal and formal investigations." (*Id.* ¶ 91.) Otherwise, the substance of the allegations regarding the Chinese government's antitrust investigation are in large part the same as the first amended complaint. (*Compare* FAC, ECF No. 23, ¶¶ 75, 77, *with* PSAC, ECF No. 110-3, ¶¶ 79, 83.)

> 3.   *Revised Allegations as to Tencent's Violations of Chinese Anti-Monopoly Laws*

Finally, as relevant for the purposes of this motion, Plaintiffs' proposed complaint includes only minor amendments to allegations that Tencent's conduct violated anti-monopoly laws and thus risked triggering potential fines and penalties on Tencent's business. (*Compare* FAC, ECF No. 23 ¶ 81 ("According to Article 4733, Tencent Music could be liable to have all of its profits confiscated, and also be subject to a penalty of up to 10% of its sales achieved in the previous year in addition to relinquishing its exclusive copyrights."), *with* PSAC, ECF No. 110-3, ¶ 89 ("Article 47 of the Anti-Monopoly Law subjects Tencent Music to have all of its profits confiscated,

---

[11] The Court notes Plaintiffs' efforts to incorporate the April 25, 2018 PaRR Memo into the pleadings. (*See* Pls.' Mem., ECF No. 110-1, at 2 n.1, 3; Mem. and Order, ECF No. 108, at 9 n.6; Apr. 25, 2018 PaRR Memo, attached as Ex. 5 to Pls.' Mot., ECF No. 110-8.) As discussed *infra*, because the Court finds that Defendants have failed to demonstrate that Plaintiffs' revised claims concerning the September 2017 meeting lack facial plausibility, the Court need not resolve whether this article supports Plaintiffs' claims at this juncture.

along with a penalty of up to 10% of its sales achieved in the previous year, in addition to forcing it to relinquish its exclusive copyrights." (footnote omitted).)

C.   Section 11 Securities Act Claim

Based on the proposed amendments, the Court finds that the revised allegations regarding the September 2017 meeting are sufficient at this stage to give rise to a reasonable inference that Defendants' Registration Statement was misleading. Defendants' Registration Statement indicated that at the September 2017 meeting, the National Copyright Administration "encouraged the relevant industry players to 'avoid acquiring exclusive music copyright.'" (PSAC, ECF No. 110-3, ¶ 105; *see also* September 12, 2017 National Copyright Administration Article, attached as Ex. 1 to PSAC, ECF No. 110-4.) As noted above, however, the proposed amended complaint alleges that the meeting constituted "discipline" and resulted in an order "specifically targeted" at Tencent, and that Tencent nevertheless continued to "withhold licensing of 1% of its music playlist from its competitors[.]" (PSAC, ECF No. 110-3, ¶¶ 71–72.) Thus, unlike in Plaintiffs' first amended complaint, the amended allegations allow the Court to reasonably infer that: (1) Tencent was the "target" of the September 2017 meeting with the National Copyright Administration; (2) Tencent received specific disciplinary action at the September 2017 meeting barring them from engaging in exclusive licensing practices; and (3) Tencent disregarded those directives.

Defendants contend that Plaintiffs' proposed amendments constitute a mere repackaging (Defs.' Opp'n, ECF No. 111, at 2–3), and suggest that Plaintiffs are "arguing over semantics." (*Id.* at 2 (quoting *Am. Fed'n of State Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, No. 12-CV-2238 (JPO), 2013 WL 6409323, at *4 (S.D.N.Y. Dec. 9, 2013))). However, Defendants' arguments fail to adequately address the facts and additional context included in the proposed second amended complaint.

16

(*See id.* at 3–4.) For example, unlike in *Lau*, where the defendants' statements were found to be sufficiently accurate and complete because the "'truth' was publicly available," here, Plaintiffs are alleging that Defendants did not properly disclose what took place behind closed doors at a meeting — not that the occurrence of the meeting itself was publicly unavailable knowledge. 527 F. Supp. 3d at 553, 557–58. Similarly, while the Court acknowledges this case is factually distinguishable from *Christine Asia Co.*, that does not preclude a finding that Plaintiffs' revised allegations give rise to an inference that "Defendants had a duty to disclose . . . facts[] in a manner that accurately conveyed the seriousness of the problems [Tencent] faced, so as not to render Defendants' public disclosures inaccurate, incomplete, or misleading." 718 F. App'x 20, 23 (2d Cir. 2017) (summary order) (quotation marks omitted).

Accordingly, the Court finds that a reasonable investor could view the amended allegations regarding the September 2017 meeting as substantially "altering the total mix of information made available" with respect to Defendants' Registration Statement. *Set Cap. LLC*, 996 F.3d at 84; *see also Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("[D]isclosure is required . . . when necessary to make . . . statements made, in light of the circumstances under which they were made, not misleading." (quotation marks omitted)); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) ("[D]isclosure . . . must steer a middle course, neither submerging a material fact in a flood of collateral data, nor slighting its importance through seemingly cavalier treatment.").[12] Therefore, because Defendants have not shown that the

---

[12] The sufficiency of Plaintiffs' revised Section 11 claim based on alleged material misstatements or omissions regarding the Chinese government's antitrust investigation or Tencent's violations of Chinese anti-monopoly laws is less apparent. The Court notes that the proposed second amended complaint adds a citation to the Underwriter Agreement "attached to and incorporated into" Tencent's Registration Statement. (*See* PSAC, ECF No. 110-3, ¶¶ 108–

proposed amendments would be futile as to Plaintiffs' Section 11 Securities Act claim concerning material misstatements and omissions in the Registration Statement related to the September 2017 meeting, and given the preference for "liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court concludes that Defendants have not demonstrated futility of the proposed amendment. *Porat*, 464 F.3d at 276; *see also In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 125 n.11.

Accordingly, Plaintiffs' request for leave to file a second amended complaint is granted without prejudice to Defendants' ability to challenge the sufficiency of Plaintiffs' amended claims more granularly in the context of a motion to dismiss or on summary judgment, as discussed *supra* notes 7 and 12.

D. Section 10(b) Exchange Act Claim

For Plaintiffs' Section 10(b) claim, the Court finds that Plaintiffs' proposed amended complaint alleges facts as to both the September 2017 meeting and the Chinese government's subsequent antitrust investigation into Tencent, which, taken to be true, could support a claim that Defendants' 2018 Annual Report, filed in April 2019, contained materially misleading statements and omissions. Like the Registration Statement, Defendants' 2018 Annual Report stated that "the National Copyright Administration held meetings with a number of music industry players, including [Tencent], where it encouraged [them] to 'avoid acquiring exclusive music copyright'

---

09.) However, because Defendants have not shown futility as to Plaintiffs' amended Section 11 claim based on allegations regarding the September 2017 meeting, the Court does not address the facial plausibility of Plaintiffs' other allegations in support of this claim, finding these questions more suitable for dispositive motion practice. *Cf. Staskowski v. Cty. of Nassau*, No. 05-CV-5984 (SJF) (WDW), 2007 WL 4198341, at *4 (E.D.N.Y. Nov. 21, 2007) (explaining that in evaluating futility, "the court should not consider the merits of a claim or defense on a motion to amend unless the amendment is 'clearly frivolous or legally insufficient on its face'" (quoting *Blaskiewicz*, 29 F. Supp. 2d at 138)).

and indicated that they should also not engage in activities involving 'collective management of music copyright.'" (PSAC, ECF No. 110-3, ¶ 123.) The report further stated that "[t]here is substantial uncertainty as to whether some of [Tencent's] current licensing arrangements may be found objectionable by the regulatory authorities in the future." (*Id.*)

As discussed above regarding Plaintiffs' revised Section 11 claim, the Court similarly finds that in the context of the Annual Report, Defendants' alleged misstatements and omissions about the September 2017 meeting are not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Wilson*, 671 F.3d at 131; *see also Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n*, 873 F.3d at 146; *Lau*, 527 F. Supp. 3d at 551. Plaintiffs' proposed amended complaint adds allegations about the Chinese government's antitrust oversight and investigation into Tencent, giving rise to a reasonable inference that by April 2019, Defendants were aware of additional context and information about the Chinese antitrust enforcement authorities' investigation of Tencent that rendered the 2018 Annual Report materially misleading. (*See* PSAC, ECF No. 110-3, ¶ 79 ("Immediately after the NDRC investigation, SAIC also launched its antitrust investigation of Tencent [] and sent a questionnaire to the Company at approximately the end of 2017 or the beginning of 2018 . . . . The [April 2018] PaRR Memo noted that PaRR had contacted Tencent Music for comment on the [antitrust] investigations."); *see also* Mem. and Order, ECF No. 108, at 9 (stating that it is "undisputed that the official investigation" was launched in January 2019)); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 584 (S.D.N.Y. 2016) ("[T]he question here is not whether [defendant] had an independent duty to announce the [governmental] Investigation; it

is whether, in light of that Investigation, the statements [defendant] chose to make were materially misleading.").

Given Plaintiffs' revised allegations pertaining to the "order" and "discipline" handed down to Tencent at the September 2017 meeting, the alleged investigative action that took place in 2018, and the allegations that an official investigation had commenced as of January 2019, the Court finds that Defendants have not shown Plaintiffs' claim of material misstatements and omissions in Tencent's 2018 Annual Report to be lacking facially plausibility. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 151 (2d Cir. Nov. 24, 2021) ("A statement is materially misleading when the defendants' representations, taken together and in context, would have misled a reasonable investor." (quotation marks omitted)); *see also Horowitz v. Sunlands Tech. Grp.*, No. 19-CV-3744 (FB) (SMG), 2021 WL 1224517, at *3 (E.D.N.Y. Mar. 31, 2021) ("[A] warning framed in hypothetical terms does not apprise a reasonable investor of actual misconduct."); *Menaldi*, 164 F. Supp. 3d at 583–84.[13] Accordingly, the Court finds that Defendants have similarly failed to demonstrate futility here, and given our circuit's "strong preference for resolving disputes on the merits," Plaintiffs should be allowed to proceed with amendment. *Loreley Fin*, 797 F.3d at 190.

E. Rule 15 Standard for Amendment

As noted above, under Federal Rule of Civil Procedure 15, parties should generally "be allowed to amend their pleadings . . . unless there is evidence of undue

---

[13] As to the remaining elements of Plaintiffs' Section 10(b) claim, i.e., scienter; connection with the purchase or sale of securities; reliance; economic loss; and loss causation, the Court finds for the purposes of the instant motion — particularly given that these elements have not been briefed (*see generally* Defs.' Opp'n, ECF No. 111) — that Defendants have not demonstrated futility. *Cf. Christine Asia Co.*, 718 F. App'x at 23 ("Considering *all* of the facts alleged, taken collectively, Plaintiffs adequately plead strong circumstantial evidence of scienter." (emphasis in original) (citation and quotation marks omitted)).

delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Saravia v. Royal Guard Fence Co.*, No. 19-CV-2086 (DRH) (SIL), 2020 WL 5231696, at *9 (E.D.N.Y. Sept. 2, 2020) (quotation marks omitted). Because it does not appear "beyond doubt" that Plaintiffs can plead "no set of facts that would entitle [them] to relief," *Hatteras Enterprises, Inc.*, 2019 WL 9443845, at *2, the Court concludes that Plaintiffs' proposed amendments "are not, on their face, entirely futile." *City of Omaha*, 2010 WL 3958849, at *3 (S.D.N.Y. Sept. 24, 2010). *Cf. Altimeo Asset Mgmt.*, 19 F.4th at 151 ("[E]ven securities plaintiffs need not prove their entire case within the confines of the complaint." (quoting *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021))).

The Court also finds no evidence of undue delay, bad faith, dilatory tactics, or undue prejudice. *See In re BRF S.A. Sec. Litig.*, 2019 WL 12875444, at *3. Therefore, the Court concludes that Defendants have not met their "burden of establishing that leave to amend would be prejudicial or futile." *Blaskiewicz*, 29 F. Supp. 2d at 137. Plaintiffs' motion for leave to amend is granted.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for leave to amend. Plaintiffs are respectfully directed to file their second amended complaint within fourteen days of this Memorandum and Order.

**SO ORDERED.**

Dated:  Brooklyn, New York
        December 27, 2021

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE